UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FIRST INDEPENDENCE BANK,

                Plaintiff,                           Civil Action No.
                                                      07-CV-14462

vs.

                                                       HON. BERNARD A. FRIEDMAN

TRENDVENTURES, L.L.C., et al.,

                Defendants.

_____/


**OPINION AND ORDER GRANTING FIRST INDEPENDENCE BANK'S MOTION TO REMAND, DENYING FIRST INDEPENDENCE BANK'S MOTION FOR COSTS, EXPENSES, AND ATTORNEY FEES, AND DENYING BANK OF AMERICA'S MOTION TO STRIKE FIRST INDEPENDENCE BANK'S REPLY**

        This matter is presently before the Court on First Independence Bank's Motion to Remand and for Costs, Expenses, and Attorney Fees [docket entry 7] and Bank of America's Motion to Strike [docket entry 14]. On October 19, 2007, Bank of America filed its Notice of Removal. First Independent Bank filed a Motion to Remand on November 7, 2007. Bank of America filed a response to First Independence Bank's Motion to Remand on November 21, 2007, and on December 3, 2007, First Independence Bank filed a reply.

        The Court has had an opportunity to thoroughly examine the pleadings, documents, and evidence submitted by the parties in this matter. Pursuant to E.D. Mich. LR 7.1(e)(2), the Court will decide this matter without oral argument. For the reasons stated below, the Court finds that Bank of America's removal was procedurally improper, and will therefore remand this matter to Wayne County Circuit Court pursuant to 28 U.S.C. § 1447(c).

1

I.  **THE ORIGINAL COMPLAINT, THE COMPLAINT IN INTERVENTION, AND THE PARTIES**

    A.    *The Original Complaint and the Parties Thereto*

First Independence Bank initiated this action on November 30, 2006, when it filed its Complaint in Wayne County Circuit Court.[1] In its Complaint, First Independence Bank named three parties as defendants: (1) Trendventures, LLC d/b/a US Bankcard, a California limited liability company ("Trendventures, LLC of California"); (2) Process America, Inc.; and (3) Carl Smith ("Smith").[2] According to First Independence Bank's Complaint, Smith is the president of Trendventures, LLC of California and owns all or part of Process America, Inc. (*See* Original Compl. at ¶ 4.) The state court dismissed Process America, Inc. from this action on December 15, 2006. (*See* Notice of Removal at ¶ 4.) In its Notice of Removal, Bank of America states that Process America, Inc. was "improperly named in the lawsuit." (*See id.* at ¶ 12 n.2.)

The allegations contained in the Original Complaint arise out of what appears to be an extremely complicated and convoluted scheme allegedly perpetrated by Smith and his affiliates to misappropriate a large sum of money from First Independence Bank and, ultimately, Eurofly, S.P.A. ("Eurofly"), the Intervening Plaintiff.[3] First Independence Bank is a principal member of VISA, U.S.A., Inc. and MasterCard International, Inc. (*See* Original Compl. at ¶ 9.) As such, First Independence Bank is authorized to sign agreements with merchants, enabling the merchants to accept VISA and MasterCard credit cards from their customers in accordance with the terms and

---

[1] The Original Complaint is attached as Exhibit A to Bank of America's Notice of Removal.

[2] These three defendants shall collectively be referred to as "the original defendants."

[3] Eurofly's role in this litigation is explained in more detail below.

2

conditions of certain agreements between First Independence Bank and the credit card companies. (*See id.*) According to First Independence Bank, Trendventures, LLC of California is in the business of developing and marketing merchant credit card programs, originating merchant relationships, and providing various services to those merchants. (*See id.* at ¶ 10.) On or about February 7, 2007, First Independence Bank entered into a merchant processing agreement with Trendventures, LLC of California, in which the two agreed to establish a merchant processing program. (*See id.* at ¶ 11.) Under the agreement, Trendventures, LLC of California agreed to become a registered independent sales organization of First Independence Bank. (*See id.* at ¶ 12.) The agreement required Trendventures, LLC of California to refer all merchants to First Independence Bank, and no other VISA/MasterCard member bank, for credit card processing services. (*See id.* at ¶ 13.) The agreement further specified that Trendventures, LLC of California would deposit all funds generated from any merchant processing agreement into an account at First Independence Bank. (*See id.*)

In November 2006, First Independence Bank learned that Smith had breached this agreement by entering into a merchant credit card processing agreement with Eurofly without notifying First Independence Bank. First Independence Bank also learned that Smith had deposited funds generated from that agreement into a Bank of America[4] account rather than into an account at First Independence Bank. (*See id.* at ¶ 14.) First Independence Bank states that, at that time, the allegedly unauthorized Bank of America account contained $3.7 million. (*See id.*)

First Independence Bank contacted Smith on several occasions, both orally and in writing, demanding that the $3.7 million be transferred from the Bank of America account and put

---

[4] As explained more fully below, Bank of America is one of five defendants named by Eurofly in its Complaint in Intervention.

into an account at First Independence Bank. (*See id.* at ¶¶ 15, 18, 20.) Soon thereafter, First Independence Bank learned that Smith transferred almost all of the money out of the Bank of America account; however, First Independence Bank did not receive a penny. (*See id.* at ¶ 26.) The Original Complaint contains two counts. In Count One, First Independence Bank requested a temporary restraining order and a preliminary and permanent injunction against the original defendants, thereby preventing them from transferring any additional funds out of the Bank of America account. In Count Two, First Independence Bank requested the same relief with respect to Bank of America, prohibiting Bank of America from transferring any funds out of any account established by Smith or his affiliates.[5] The state court granted First Independence Bank's request for a temporary restraining order and subsequently issued a preliminary injunction, enjoining the transfer of the funds at issue. (*See* Mot. to Remand at 4.)

    B.  *The Complaint in Intervention and the Parties Thereto*

On December 19, 2006, the state court allowed Eurofly to intervene in this action as a plaintiff, and on September 14, 2007, Eurofly filed a separate Complaint in Intervention. (*See* Notice of Removal at ¶¶ 3, 9.) Eurofly named five defendants in its Complaint. Two of the five, First Independence Bank and Smith, are also parties with respect to the Original Complaint. The three new parties are (1) Trendventures, Inc. d/b/a US Bankcard ("Trendventures, Inc."); (2) Trendventures, LLC, d/b/a US Bankcard, a Virginia limited liability company ("Trendventures, LLC

---

[5] Neither First Independence Bank nor Bank of America has explained the anomaly that is presented by virtue of the fact that First Independence Bank, in its Original Complaint, sought relief against a non-party who it failed to name as a defendant. (*See* Original Compl. at ¶ 46.)

of Virginia"); (3) and Bank of America.[6]

Eurofly is the merchant whose funds were allegedly misappropriated by Smith and USBC. Eurofly states that it entered into an agreement with First Independence Bank and USBC on or about May 18, 2006, whereby First Independence Bank and USBC would process VISA and MasterCard charges made by Eurofly's customers. (*See* Eurofly Compl. at ¶ 17.) Eurofly alleges that Smith and USBC deposited the proceeds from the credit card payments into Bank of America accounts, instead of into accounts at First Independence Bank, in violation of the merchant processing agreement. (*See id.* at ¶ 20.) Eurofly accuses Bank of America of allowing USBC and Smith to establish and maintain these accounts without first verifying whether Smith was authorized to do so. (*See id.* at ¶21.) Eurofly further contends that Bank of America allowed Smith and USBC to transfer money out of the accounts in violation of the temporary restraining order and permanent injunction issued by the state court. (*See id.* at ¶¶ 39-40.)

Additionally, Eurofly has brought claims against First Independence Bank. Eurofly states that First Independence Bank had knowledge of Smith's allegedly wrongful conduct, and that First Independence Bank assisted Smith by allowing him to maintain control over the

---

[6] The Court notes that there are three parties in this matter purportedly doing business under the name "US Bankcard." Trendventures, LLC of California is one of the original defendants, and Trendventures, LLC of Virginia and Trendventures, Inc. are defendants on Eurofly's Complaint in Intervention. In its Notice of Removal, Bank of America states that both Trendventures, LLC of California and Trendventures, LLC of Virginia are nominal parties because the former does not exist and the latter is in the business of publishing magazines and has "absolutely no affiliation with Carl Smith." (*See* Notice of Removal at ¶¶ 12 n.3, 14, 26.) According to Bank of America, Trendventures, Inc. is the proper party to this suit because Smith is the president, secretary, and treasurer of this entity. (*See id.* at ¶ 29.) Because the parties appear to be referring to the same Trendventures in their respective pleadings and briefs, i.e., the one affiliated with Smith—whichever one that might be—the Court will hereinafter refer to this defendant simply as "US Bankcard" or "USBC," as the parties do.

misappropriated funds, which were being held in a non-First Independence Bank account. (*See id.* at ¶¶ 135, 142, 150, 162, 166, 170.)

Eurofly's Complaint in Intervention contains 22 counts. Nine counts are directed at all of the defendants in intervention.[7] Six counts are directed at USBC, Smith, and First Independence Bank, only.[8] The remaining seven counts are directed at Bank of America and First Independence Bank, only.[9]

## II. WAS BANK OF AMERICA'S REMOVAL PROPER?

As mentioned above, Bank of America filed a Notice of Removal on October 19, 2007, and First Independence Bank filed its Motion to Remand on November 7, 2007. First Independence Bank contends that this matter should be remanded to Wayne County Circuit Court on the grounds that Bank of America failed to obtain the consent of all the defendants in this case prior to removing the matter to this Court.[10]

In its Notice of Removal, Bank of America explained why it failed to obtain Smith's

---

[7] Those nine counts are as follows: Count VI: Conversion; Count VII: Statutory Conversion; Count VIII: Breach of Fiduciary Duty; Count IX: Civil Conspiracy; Count X: Concert of Action; Count XII: Quantum Meruit / Unjust Enrichment / Constructive Trust; Count XIII: Negligence; Count XXI: Declaratory Judgment; and Count XXII: Injunctive Relief.

[8] Those six counts are as follows: Count I: Fraudulent Misrepresentation / Fraudulent Inducement; Count II: Innocent Misrepresentation; Count III: Silent Misrepresentation; Count IV: Fraud; Count V: Negligent Misrepresentation; and Count XI: Promissory Estoppel.

[9] Those seven counts are as follows: Counts XIV through XVII: Various UCC violations; Count XVIII: Tortious Interference with an Economic Expectancy; Count XIX: Tortious Interference with Contractual Relations; and Count XX: Bad Faith.

[10] First Independence Bank mainly argues that Bank of America should have obtained its consent prior to removing. However, the Court does not reach the merits of this argument because it finds that Bank of America was obligated to obtain the consent of one of First Independence Bank's co-defendants on Eurofly's Complaint in Intervention, Smith.

consent:

> Defendant Carl Smith has not appeared in this case since an Order for a Bench Warrant was issued for his arrest on March 16, 2007. An Entry of Default has been ordered by the state court against Smith. [Bank of America] has exercised reasonable efforts to locate Smith and obtain his consent to removal but has been unable to do so. See Exhibit D. In addition to sending Smith correspondence at the email address specified on the Eurofly Complaint, [Bank of America] also attempted to ascertain Smith's whereabouts by contacting business associates, neighbors, and family members. Id. Smith's whereabouts have been unknown since March, 2007. Upon information and belief, he has not been served with the Eurofly Complaint.

(Notice of Removal at ¶ 28.) Exhibit D, referenced above, contains the Affidavit of Laura Kane, a paralegal at Barnes & Thornburg, LLP, Bank of America's counsel. The Affidavit explains, in detail, what steps were taken to locate Smith in order to obtain his consent. The effort, though ultimately unsuccessful, was clearly exhaustive and diligent. Because Bank of America could not locate Smith, it failed to obtain his consent prior to filing the Notice of Removal.

Title 28, section 1441(a) of the United States Code reads, in relevant part,

> any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

According to Moore's Federal Practice, "because the effect of removal is to deprive the state court of jurisdiction over a case properly before [it], removal raises federalism concerns that mandate strict construction." 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 107.05 (3d ed. 2007) (footnote omitted). "The removal petition is to be strictly construed, with all doubts resolved against removal." *Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989) (citing *Wilson v. United States Dep't of Agric., Food, & Nutrition Servs.*, 584 F.2d 137, 142 (6th Cir.1978)). *See also* MOORE'S FEDERAL PRACTICE at ¶ 107.06 ("all doubts

are resolved in favor of remand") (footnote omitted). Erring on the side of remand is a sound policy:

> [i]f the court of appeals determines that the case should have been remanded on the ground that there was no federal jurisdiction, the judgment on the merits must also be vacated because of the lack of jurisdiction. If the case was improperly remanded, at least the state court judgment will not be invalidated because of a lack of subject matter jurisdiction.

MOORE'S FEDERAL PRACTICE at ¶ 107.05. Clearly, then, "the district court must evaluate the removal question carefully." *Id*. "If the requirements of the removal statute are met, the right to remove is absolute." *Id*.

The first issue before the Court is whether Bank of America had the right to remove this case to federal court. "The right to remove a case from state to federal court is vested exclusively in 'the defendant or the defendants . . .'" *Yakama Indian Nation v. State of Wash. Dep't of Revenue*, 176 F.3d 1241, 1248 (9th Cir. 1999) (quoting 28 U.S.C. § 1441(a)). "For the purpose of removal, the federal law determines who is plaintiff and who is defendant." *Chicago, Rock Island & Pac. R.R. Co. v. Stude*, 346 U.S. 574, 580 (1954). "Determining who is authorized to remove the case can become quite complicated . . . if additional parties or claims are added after the complaint is filed." MOORE'S FEDERAL PRACTICE at ¶ 107.11[1][a]. "It must be determined whether the party seeking to remove on the basis of any [later asserted claims] is a *defendant* for removal purposes." *Id*. (emphasis in original).

The present case was removed by Bank of America, a defendant on Eurofly's Complaint in Intervention and a non-party with respect to the Original Complaint. Thus, the first question is whether a defendant in intervention qualifies as a defendant for removal purposes when that party was not a party to the Original Complaint. According to Moore's Federal Practice,

> [a]s used in Section 1441(a), the general removal statute, the word *defendant* means the original plaintiff's defendant. Thus, generally, a party who was

8

> not a defendant on the plaintiff's original suit will not be recharacterized as a "defendant" by reason of the filing of later claims filed against that party in . . . claims in intervention.

*Id.* at ¶ 107.11[1][b][I] (emphasis in original). Bank of America is not the "original plaintiff's defendant" because First Independence Bank did not name Bank of America as a defendant in its Original Complaint. Rather, Bank of America is a defendant on Eurofly's Complaint in Intervention only. Consequently, based on the general rule, it would appear that Bank of America, as a non-party on First Independence Bank's Original Complaint, had no right to remove this action under 28 U.S.C. § 1441(a).

However, a subsequent passage in Moore's Federal Practice provides more detailed insight into the operation of the general rule:

> [v] **Whether Defendant Intervenors May Remove**
>
> Assuming that the original action would have been removable, and if the time for removing an action has not passed, and the original defendants join in the notice of removal or may be disregarded for removal purposes, the action may be removable by an intervening defendant. On the other hand . . . if the sole basis for removing the action is the claim raised through the intervention of the intervening defendant, the intervenor may not remove the action.

*Id.* at 107.11[1][b][v] (footnote and citations omitted). *See also York Hannover Holding A.G. v. Am. Arbitration Ass'n*, 794 F. Supp. 118, 121 (S.D.N.Y. 1992) (finding that a party's status as an intervenor does not necessarily preclude it from initiating removal). Therefore, it appears that there are three requirements that must be met before an intervening defendant, like Bank of America, can remove: (1) the original action must be removable; (2) the removal must be timely; and (3) the original defendants must join in the removal or be disregarded for removal purposes. The Court examines these elements in reverse order. Because Smith, an original defendant, did not join in the removal and cannot be disregarded for removal purposes, the Court need not reach the remaining

9

two requirements.

"In general, all defendants must join in the notice of removal. Because the right of removal is jointly held by all the defendants, the failure of one defendant to join in the notice precludes removal." MOORE'S FEDERAL PRACTICE at ¶ 107.11[1][c] (footnote omitted). "The rule of unanimity requires that in order for a notice of removal to be properly before the court, all defendants who have been served or otherwise properly joined in the action must either join in the removal, or file a written consent to the removal." *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 n.3 (6th Cir. 1999). *See also* 14C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3731, pp. 258-265 (3d ed. 1998) (stating that "[t]he rule [of unanimity] applies to all forms of defendants—whether they are characterized as indispensable, necessary, or proper parties—over whom the state court has acquired jurisdiction as of the time of removal"). Although, in the Sixth Circuit, "a breach of the rule of unanimity . . . may not be raised *sua sponte* . . . . frank opposition to removal by a codefendant who affirmatively seeks a remand . . . empowers the district court to enforce the unanimity requirement." *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 516-517 (6th Cir. 2003).

The Sixth Circuit has excused noncompliance with the rule of unanimity in three situations:

> (1) the non-joining defendant has not been served with service of process at the time the removal petition is filed; (2) the non-joining defendant is merely a nominal or formal party; and, (3) the removed claim is a separate and independent claim as defined by 28 U.S.C. § 1441(c).

*Klein v. Manor Healthcare Corp.*, 1994 WL 91786, at *3 n.8 (6th Cir. Mar. 22, 1994) (unpublished). The first exception shall hereinafter be referred to by the Court as the "non-service exception" to the rule of unanimity.

In order for Bank of America's removal to be proper, original defendants Trendventures, LLC of California, Process America, Inc., and Smith, needed to join in the removal, or else be disregarded for removal purposes. None of these parties have joined in the removal. Thus, whether Bank of America can remove hinges on whether all three parties can be disregarded for removal purposes. Even assuming that Trendventures, LLC of California and Process America, Inc. may be disregarded because they are nominal parties, as Bank of America argues, Smith may not be disregarded.

Smith is not a nominal party. Moreover, the "separate and independent claim" exception does not apply in diversity cases. *See* 28 U.S.C. § 1441(c). Thus, he may be disregarded for removal purposes only if he was a "non-joining defendant" that "ha[d] not been served with service of process at the time the removal petition [was] filed." *See Klein*, 1994 WL 91786, at *3 n.8. As noted above, Smith is a defendant with respect to both First Independence Bank's Original Complaint and Eurofly's Complaint in Intervention. Because he has appeared in this action with respect to First Independence Bank's Original Complaint, the non-service exception does not apply. Smith is not a "non-joining" defendant with respect to this matter as a whole (i.e., *both* complaints), and the Court cannot conclude that he "ha[d] not been served with service of process at the time the removal petition [was] filed." *See id.* While the evidence submitted by Bank of America seems to suggest that Smith was not served and not properly joined with respect to Eurofly's Complaint in Intervention, he was clearly served and properly joined with respect to First Independence Bank's Original Complaint. In fact, the Court notes that, according to the state court docket sheet, Smith's attorney at the time, P. Rivka Schochet, filed an appearance on his behalf on December 8, 2006, and filed an answer on January 2, 2007. Because Smith has appeared in this action, albeit only in

11

connection with the Original Complaint, the non-service exception does not apply to excuse Bank of America's noncompliance with the rule of unanimity.[11]

---

[11] Bank of America urges the Court to recognize and apply a fourth exception to the rule of unanimity that has been created and utilized by one United States district court in Florida. In *White v. Bombardier Corp.*, 313 F. Supp.2d 1295, 1298 (N.D. Fla. 2004), a class of defendants, referred to by the court as the "Bombardier defendants," failed to obtain the consent of their co-defendants, the "Destiny defendants," prior to filing the notice of removal. The Destiny defendants never appeared in the action, and the state court clerk entered a default against them. *See id.* at 1298. After concluding that the non-consenting Destiny defendants were properly served with service of process, the court declined to excuse the Bombardier defendants' noncompliance with the rule of unanimity based on any of the recognized exceptions to the rule, most notably the non-service exception. *See id.* at 1301. However, after noting that the court's "research has revealed no reported federal appellate court decision where a removing defendant has been excused from obtaining the consent of a codefendant who as [sic] been personally served, but against whom a default has been entered for failure to appear and answer the complaint," the court proceeded to create a new exception, applicable in cases where default has been entered against a party who has entirely failed to appear in the state court action:

> I conclude that, consistent with a strict interpretation of the removal statutes in favor of remand, it is possible under some circumstances for the unanimity requirement to be excused with respect to a defaulted defendant who has not appeared. However, in order to excuse such consent, the removing defendant must allege with specificity in its petition for removal, and prove upon challenge by a timely motion to remand, that the removing defendant has unsuccessfully exhausted all reasonable efforts to locate the defaulted defendant to obtain its consent. Conclusory allegations in an affidavit are insufficient. Instead, to sustain its burden on removal, the removing defendant must describe what efforts it took and those efforts must be consistent with the exercise of reasonable diligence, similar to that necessary for a plaintiff to establish a basis for substitute service.

*Id*. at 1303-1304 (footnote omitted).

While the Court acknowledges Bank of America's efforts to locate Smith, the Court declines to recognize the *White* court's "non-appearing, defaulted defendant" exception to the unanimity rule. The *White* court fails to cite any federal law in support of the creation of this exception and the exception has not been recognized by the Sixth Circuit. Nor has it been recognized by any federal appellate court, to this Court's knowledge. The Court also notes that the two most prominent and respected treatises on federal practice and procedure likewise do not mention such an exception to the rule of unanimity in their respective discussions on the topic.

12

The Court notes that Bank of America appears to have made strenuous and diligent efforts to locate Smith in order to obtain his consent to removal. However, the Court is without authority under clearly established law to excuse noncompliance with the rule of unanimity in this case. "The unanimous consent requirement is a bright line limitation on federal jurisdiction, which some might consider unfair or arbitrary, that is an inevitable feature of a dual court system involving one court of limited jurisdiction and a strictly construed right of removal." MOORE'S FEDERAL PRACTICE at ¶ 107.11[1][c] (citing *Russell Corp. v. Am. Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) (declining to recognize a fairness exception to the unanimity rule)). The Court will therefore remand this case to Wayne County Circuit Court pursuant to 28 U.S.C. § 1447(c).

## III. FIRST INDEPENDENCE BANK'S MOTION FOR COSTS, EXPENSES, AND ATTORNEY FEES

First Independence Bank seeks costs, expenses, and attorney fees. Title 28, section 1447(c) of the United States Code broadly authorizes the Court to award such fees in the event that a case is remanded: "[a]n order remanding the case may require payment of just costs and any actual

---

*See* MOORE'S FEDERAL PRACTICE at ¶ 107.11[1][d] (under the heading "Special Cases in Which Not All Defendants Need to Join") and 14C WRIGHT, MILLER & COOPER, at § 3731, pp. 267-277 (discussing the exceptions to the rule of unanimity). For these reasons, the Court declines to recognize the exception created by the *White* court.

However, even if the Court did recognize the *White* court's "non-appearing, defaulted defendant" exception, it would not apply in this case. As mentioned above, the *White* exception applies "with respect to a defaulted defendant who has not appeared." *White*, at 313 F. Supp.2d at 1303-1304 (footnote omitted). In the present case, though default has been entered against Smith, he did appear in the state court action. Even in the event that the Court recognized the exception, it would be unwilling to extend its scope to cover situations where an absconding defendant has appeared in an action, as Smith has with respect to the Original Complaint, and subsequently disappeared. In any case, because "all doubts are resolved in favor of remand," remand is appropriate in this case. *See* MOORE'S FEDERAL PRACTICE at ¶ 107.06 (footnote omitted).

13

expenses, including attorney fees, incurred as a result of the removal." The United States Supreme Court has shed light on when costs and expenses may properly be awarded. In *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139-141 (2005), the Supreme Court recognized that this determination would have important implications on a party's decision to seek removal. On one hand, "[i]f fee shifting were automatic, defendants might choose to exercise this right only in cases where the right to remove [is] obvious." *Id*. at 140. On the other hand,

> [t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff.

*Id*. Indeed, the Court noted that the test must strike a delicate balance:

> [t]he appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

*Id*. Therefore, the Court held that a district court may, in its discretion, award costs and expenses "where the removing party lacked an objectively reasonable basis for seeking removal." *Id*. at 139-141.

Given the extremely complicated jurisdictional posture of this case and the complexity of the issues presented, the Court finds that Bank of America had an objectionably reasonable basis for seeking removal. Furthermore, the Court has no reason to believe that Bank of America's removal was motivated by a desire to prolong this litigation or impose added costs on the other parties. Therefore, the Court will deny First Independence Bank's Motion for Costs, Expenses, and Attorney Fees.

Accordingly,

IT IS ORDERED that First Independence Bank's Motion to Remand is granted. This matter is remanded to Wayne County Circuit Court pursuant to 28 U.S.C. § 1447(c).

IT IS FURTHER ORDERED that Bank of America's Motion to Strike First Independence Bank's Reply Brief, or in the Alternative, Motion for Leave to File Sur-Reply [docket entry 14] is denied as moot. The Court's decision to remand this matter did not rely on the arguments discussed by First Independence Bank in its Reply.

IT IS FURTHER ORDERED that First Independence Bank's Motion for Costs, Expenses, and Attorney Fees is denied.

   s/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: January 30, 2008
       Detroit, Michigan

**I hereby certify that a copy of the foregoing document
was served upon counsel of record by electronic and/or first-class mail.**

**s/Carol Mullins
Case Manager to Chief Judge Friedman**